IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KATHRYN LYNN CAMPBELL, on behalf of herself and similarly situated Equity Units holders of American International Group, Inc., <br><br> Plaintiff <br><br> v. <br><br> AMERICAN INTERNATIONAL GROUP, INC. et al., <br><br> Defendants. | ) ) ) ) ) ) 1:14cv1320 (LMB/IDD) ) ) ) ) ) ) ) ) |

## MEMORANDUM OPINION

Before the Court are plaintiff's Motion for Declaratory Judgment [Dkt. No. 7], plaintiff's Motion for Summary Judgment [Dkt. No. 8], and defendants' Motion to Dismiss. [Dkt. No. 18] For the reasons stated in open court and in this opinion, defendants' Motion to Dismiss will be granted and plaintiff's Motions for Declaratory Judgment and for Summary Judgment will be denied.

### I. BACKGROUND

This purported class action arises from the sale of publicly-traded securities issued by defendant American International Group, Inc. ("AIG"). Plaintiff Kathryn Lynn Campbell ("Campbell")[1] alleges that AIG deliberately devalued her investment to enrich itself and its directors. Campbell seeks both a declaratory judgment that AIG violated Securities and Exchange Commission ("SEC") regulations and money damages under various state law claims.

---

[1] Campbell claims to bring this action "on behalf of herself and similarly situated" securities holders and so seeks class certification. Because the Motion to Dismiss will be granted, the class certification issue, Motion for Summary Judgment and Motion for Declaratory Judgment need not, and will not, be addressed.

In May 2008, AIG issued complex securities called "Equity Units" and listed them on the New York Stock Exchange. Complaint ¶ 1. AIG issued a prospectus detailing how the Equity Units operated:

> [AIG is] offering Equity Units initially consisting of Corporate Units. Each Corporate Unit will have an initial stated amount of $75 and will consist of a stock purchase contract issued by [AIG] and, initially, a 1/40, or 2.5%, undivided beneficial ownership interest in (i) [AIG's] Series B-1 Junior Subordinated Debentures initially due February 15, 2041 (the "Series B-1 Debentures"), (ii) [AIG's] Series B-2 Junior Subordinated Debentures initially due May 1, 2041 (the "Series B-2 Debentures") and (iii) [AIG's] Series B-3 Junior Subordinated Debentures initially due August 1, 2041 (the "Series B-3 Debentures"), each with a principal amount of $1000.
> - The stock purchase contract will obligate you to purchase from [AIG], and [AIG] to sell to you, on each of February 15, 2011, May 1, 2011 and August 1, 2011 (each, a "stock purchase date") for $25 in cash on each of the three stock purchase dates, a variable number of shares of [AIG's] common stock, subject to anti-dilution adjustments, equal to the applicable settlement rate, calculated as follows:
>   - if the applicable market value of [AIG's] common stock, which will be determined by reference to the average of the trading prices of [AIG's] common stock over the 20-trading day period ending on the third business day prior to the relevant stock purchase date, is greater than or equal to the threshold appreciation price of $45.60, the settlement rate will be 0.54823 shares of [AIG's] common stock;
>   - if the applicable market value of [AIG's] common stock is less than the threshold appreciation price, but greater than the reference price of $38.00, the settlement rate will be a number of shares of [AIG's] common stock equal to $25 divided by the applicable market value; and
>   - if the applicable market value of [AIG's] common stock is less than or equal to the reference price, the settlement rate will be 0.6579 shares of [AIG's] common stock.
> - [AIG] may also pay you quarterly contract adjustment payments on the stock purchase contracts:
>   - from and including May 16, 2008 to but excluding the first stock purchase date, at an annual rate of 2.7067% on the initial amount of $75 per Equity Unit;
>   - from and including the first stock purchase date to but excluding the second stock purchase date, at an annual rate of 2.6450% on the adjusted stated amount of $50 per Equity Unit; and
>   - from and including the second stock purchase date to but excluding the third stock purchase date, at an annual rate of 2.6100% on the adjusted stated amount of $25 per Equity Unit.

Complaint Ex. 3 ("Prospectus") at Cover Page. The Prospectus explained that the number of shares that a purchaser would receive was "subject to anti-dilution adjustments," id., and described the circumstances in which anti-dilution would occur and how anti-dilution would be performed. Id. at S-48 – S-51. Although the Prospectus recognized that the market value of the common stock could increase (resulting in a profit for the purchaser of an Equity Unit), Prospectus at S-39, it also warned purchasers that

> There can be no assurance that the market value of [AIG's] common stock on the three stock purchase dates will not be less than the price paid by you for the Equity Units . . . Accordingly, you bear the entire risk that the market value of the common stock may decline, and that the decline could be substantial and result in a loss of all or a portion of your investment.

Prospectus at S-22. This warning appeared in a section labeled, in bold and italics, "You will bear the entire risk that the market value of our common stock will decline." Id.

At some point, Campbell acquired some number of the Equity Units issued by AIG. Complaint ¶ 1.[2] On each of the stock purchase dates, however, AIG paid Campbell "the approximate value of $1.58 . . . per Equity Unit." Complaint ¶ 2(B). Campbell alleges that she was "promised" that the Equity Units would have a value of $25 per stock purchase date, and that therefore defendants owe her $23.42 per Equity Unit per stock purchase date.[3] Id.

Despite alleging that Campbell lost most of her investment, the complaint does not allege that AIG breached the Prospectus or committed securities fraud. See Complaint. Instead, Campbell brings a five-count complaint alleging in Count I that the Prospectus AIG used to

---

[2] The complaint does not detail when Campbell acquired the Equity Units, how she acquired the Equity Units, or how many Equity Units she acquired. The complaint also does not specify whether Campbell purchased the units at all, only using the verb "acquired." At oral argument counsel clarified that Campbell purchased over 6,000 units, but still did not indicate when Campbell made the purchase.

[3] As the Equity Unit also gave Campbell an interest in AIG debentures, however, it is unclear whether $23.42 per Equity Unit per stock purchase date is an accurate measure of her losses.

describe the Equity Units violated the SEC's "plain English" regulations[4] and seeking a declaration to that effect, Complaint ¶¶ 39-43; in Count II alleging that defendants breached the covenant of good faith and fair dealing under Delaware law, id. ¶¶ 44-49; in Count III alleging that the breach was in bad faith under Delaware law, id. ¶¶ 50-55; in Count IV alleging that defendants breached the implied covenant of good faith and fair dealing under New York law, id. ¶¶ 56-59; and in Count V, alternatively, alleging unjust enrichment under Delaware law. Id. ¶¶ 60-64. Campbell sues not only AIG, the issuer of the Equity Units, but also fourteen current and former members of the AIG Board of Directors, only two of whom were members of the Board of Directors when the Equity Units issued. Memorandum of Law in Support of Defendants' Motion to Dismiss [Dkt. No. 18] Att. 2 ("MTD Br.") at 6 n.6.

Campbell has made the state-law allegations before. On January 24, 2012 Campbell filed a complaint in the District Court for the District of Columbia alleging the same basic facts, against the same defendants, seeking money damages under the same state law claims, and claiming federal question jurisdiction under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). The district court dismissed the action for lack of subject matter jurisdiction, finding that SLUSA did not confer jurisdiction over Campbell's state-law claims. Campbell v. Am. Intern. Grp., Inc., 926 F. Supp. 2d 178 (D.D.C. 2013). Campbell appealed, and the D.C.

---

[4] Before distributing a security, a seller must register the security with the SEC. 15 U.S.C. § 77e(a). Sale of the security must be accompanied or preceded by delivery of a prospectus describing the security. Id. § 77e(b). Congress required some specific information be provided in a prospectus, id. § 77j(a), but gave the SEC the power to promulgate regulations delineating other prospectus requirements "deemed necessary or appropriate in the public interest or for the protection of investors." Id. § 77j(c). The SEC has used that power to require, among other things, that the prospectus be written in "plain English." 17 C.F.R. § 230.421(d)(1). The "plain English" regulations require, for example, that a seller of securities "must present the information in a prospectus in a clear, concise, and understandable manner" and "should avoid . . . [l]egalistic or overly complex presentations that make the substance of the disclosure difficult to understand." Id. § 230.421(b).

Circuit affirmed the dismissal. Campbell v. Am. Intern. Grp., Inc., 760 F.3d 62 (D.C. Cir. 2014), reh'g en banc denied (Sept. 10, 2014).

## II. DISCUSSION

Campbell filed the instant complaint less than one month after the D.C. Circuit denied rehearing en banc. Campbell claims subject matter jurisdiction under 28 U.S.C. 1332(a), diversity of citizenship, as well as under 28 U.S.C. 1331, federal question jurisdiction, by seeking a declaration under the Declaratory Judgment Act that the Prospectus violates certain SEC regulations. Campbell alleges that, in addition to diversity of citizenship, this Court has subject matter jurisdiction to consider her state law claims based on supplemental jurisdiction, 28 U.S.C. 1367. Defendants do not contest subject matter jurisdiction, instead arguing that Campbell's complaint does not state a claim under which relief can be granted. See MTD Br. Among their arguments, defendants maintain that the declaratory judgment count should be dismissed because there is no private cause of action for a violation of the "plain English" regulations, that the implied covenant of good faith and fair dealing counts do not state a claim because AIG performed as required by the Prospectus, and that the unjust enrichment count does not state a claim because the activity at issue was covered by the Prospectus. Defendants also argue that Campbell has not pleaded sufficient facts to establish personal jurisdiction over the individual defendants.

### A. Standard of Review

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the Court to assume that the facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor. Burbach Broadcasting Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). "Judgment should be entered when the pleadings, construing the

facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." O'Ryan v. Dehler Mfg. Co., 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).

"Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, a party must "nudge[] their claims across the line from conceivable to plausible" to survive a Rule 12(b)(6) motion to dismiss. Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Declaratory Judgment

In her first count, Campbell seeks a declaration that the Prospectus AIG issued describing the Equity Units does not comply with the SEC's "plain English" requirements. See 17 C.F.R. § 230.421(d)(1). Campbell does not have standing to pursue an action stemming from the allegedly confusing nature of the Prospectus because during oral argument her counsel admitted that Campbell had not read the Prospectus before purchasing the Equity Units. Assuming that the Prospectus violated the SEC's "plain English" regulations, Campbell still cannot establish an injury stemming from that violation because she had not read the Prospectus before buying the units and therefore could not have been injured by their (allegedly) confusing nature. To prove

standing, a plaintiff must establish injury-in-fact, causation, and redressibility. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).[5] Campbell has not met these requirements.

Even if Campbell had standing, defendants argue that she cannot receive a declaration that the Prospectus violates the "plain English" regulations because there is no private right of action for a violation of those regulations, MTD Br. at 11-12, and that even if there were such a private right, Campbell has not complied with the procedural requirements of the Private Securities Litigation Reform Act ("PSLRA"), which mandates certain notice be given before pursuing a securities class action. Campbell acknowledges that her claim is one of first impression, but argues that because she meets the requirements to invoke the Declaratory Judgment Act, a private right of action for violation of the "plain English" regulations is unnecessary. See Plaintiff's Opposition to Defendants' Motion to Dismiss [Dkt. No. 31] ("MTD Opp'n") at 2-5. Campbell's response boils down to arguing that because the Declaratory Judgment Act itself does not require an independent cause of action, and Campbell meets the requirements of the Declaratory Judgment Act, the Court does not need to determine whether there is a private right of action for violation of the "plain English" regulations.

The law does not support plaintiff's view of the Declaratory Judgment Act. Although the Fourth Circuit has not directly spoken on the issue, it has affirmed a decision from this district stating that "the Court must have before it a properly pled claim over which it has an independent basis for exercising original jurisdiction before it may act pursuant to the Declaratory Judgment Act." Clear Sky Car Wash, LLC v. City of Chesapeake, Va., 910 F. Supp.

---

[5] To the extent that Campbell seeks class certification based on the allegedly confusing nature of the Prospectus, her failure to read the Prospectus also renders her an unfit representative for the class.

2d 861, 871 n.8 (E.D. Va. 2012), aff'd, 743 F.3d 438 (4th Cir. 2014).[6] Moreover, Campbell's argument directly contradicts the Supreme Court's approach to the Declaratory Judgment Act. The Supreme Court has "long considered the operation of the Declaratory Judgment Act to be only procedural, leaving substantive rights unchanged." Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S.Ct. 843, 849 (2014) (citations and internal quotation marks omitted). The Declaratory Judgment Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). Accordingly, mere invocation of the Declaratory Judgment Act cannot confer "arising under" jurisdiction under 28 U.S.C. 1331. Id. Because "[a] suit arises under the law that creates the cause of action," Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916) (Holmes, J.), if the Declaratory Judgment Act created an independent cause of action, any claim for declaratory relief would "arise under" the laws of the United States, which would result in a vast expansion of federal jurisdiction in flat contradiction of the Supreme Court's direction. Accordingly, to be eligible for a declaratory judgment, Campbell must first identify an underlying right for which she seeks a declaration.[7]

When a plaintiff alleges that a private party violated a federal regulation, the right to sue based on that violation must come from either explicit or implied Congressional authorization for a private right of action. Alexander v. Sandoval, 532 U.S. 275, 288-91 (2001). Although

---

[6] Circuit courts addressing the issue have come to the same conclusion. Chevron Corp. v. Naranjo, 667 F.3d 232, 244-45 (2d Cir. 2012); Ali v. Rumsfeld, 649 F.3d 762, 778 (D.C. Cir. 2011); Davis v. United States, 499 F.3d 590, 594 (6th Cir. 2007); Akins v. Penobscot Nation, 130 F.3d 482, 490 n.9 (1st Cir. 1997) (finding that the Declaratory Judgment Act does not "create[] a substantive cause of action" and therefore parties "must rely on an independent source for their claims.").

[7] Because the Declaratory Judgment Act does not create an independent cause of action, Campbell's argument that she meets the "essential elements" for a declaratory judgment set forth in Volvo Const. Equip. North Am. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004) also fails.

8

Congress has explicitly authorized a number of private rights of action under the Securities Act of 1933 and the Securities Exchange Act of 1934, see, e.g., 15 U.S.C. §§ 77k and 77l, Campbell has not alleged a violation of any statutory provision explicitly authorizing her claim. To determine whether Campbell can sue for a violation of the "plain English" regulation, she must show that Congress has displayed "an intent to create not just a private right but also a private remedy." Id. It bears emphasizing that "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." Alexander, 532 U.S. at 286. Without Congress intending to create a private right of action, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87. "To determine whether a statute creates a federal private right, [a court should] look to the statutory text for 'rights-creating language.'" In re Miller, 124 Fed. App'x 152, 154 (4th Cir. 2005). Such language must be clear: "Congress must 'speak[] with a clear voice' and the statute must 'unambiguously' express the intent" for a private right of action. Clear Sky Car Wash, 743 F.3d at 444 (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002)) (citations omitted).

The Supreme Court has explained that what matters is whether a statute shows the intent to create a private cause of action, and not whether a regulation authorized by the statute provides that intent. Alexander, 532 U.S. at 291. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." Id. "[T]he language of the statute and not the rules must control." Id. (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 577 n.18 (1979)). Only "when a statute has provided a general authorization for private enforcement of regulations" may it "perhaps be

correct that the intent displayed in each regulation can determine whether or not it is privately enforceable." Id.

Campbell has identified no language in any statute which would authorize a private right of action for a violation of the SEC's "plain English" regulations. It would be surprising if such authorization existed, because the SEC, not Congress, created those regulations. See 17 C.F.R. § 230.421. Neither is there any sort of "general authorization for private enforcement" of regulations of the type contemplated in Alexander. 532 U.S. at 291. Instead, Congress identified specific circumstances which would be subject to private enforcement. See, e.g., 15 U.S.C. §§ 77k and 77l. Although Congress did not grant much private enforcement authority, it did give the SEC broad authority to enforce the securities statutes, rules, and regulations. In particular, the SEC was given the power to investigate alleged violations, transmit evidence to the Attorney General for criminal prosecution, or, particularly relevant to Campbell's case, seek "[m]oney penalties in civil actions." Id. § 77t. That the SEC has the power to enforce its rules and regulations creates a strong presumption that Congress did not intend for private individuals to have that power. Accordingly, the securities statutes provide no support for finding that Congress intended to create a private right of action for a violation of the SEC's "plain English" regulations. Under the statutory scheme constructed by Congress, such power resides solely with the SEC.

Given Campbell's lack of standing to pursue a violation of the "plain English" regulations and there being no established right for which a declaratory judgment could be issued, the declaratory judgment count (Count I) will be dismissed.[8]

---

[8] As the Court finds that there is no private right of action, defendants' argument that Campbell has not fulfilled the requirements of the PSLRA need not be addressed.

10

## C. Count IV – New York Law

"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y. 2d. 144, 153 (2002). "This embraces a pledge that 'neither party shall do anything which would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Dalton v. Educ. Testing Serv.,87 N.Y. 2d. 384, 389 (1995) (quoting Kirke La Shelle Co. v. Armstrong Co., 263 N.Y. 79, 87 (1933)). "No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship." 511 West 232nd Owners Corp., 98 N.Y. 2d at 153 (quoting Murphy v. Am. Home Prods. Corp., 58 N.Y. 2d 293, 304 (1983)).

Campbell argues that defendants breached New York's implied covenant of good faith and fair dealing by adjusting the settlement rate for the shares that Campbell was to receive, by making the language of the Prospectus confusing, and by using a confusing stock ticker label, Complaint ¶¶ 21, 23, 48B, and 54.[9] Defendants argue that Campbell does not state a claim for violation of the implied covenant of good faith and fair dealing because there can be no violation of the implied covenant when the contract has been performed. Moreover, even if there can be such a violation, Campbell's allegations are unsupported by sufficient facts in the complaint. MTD Br. at 15-20.

Defendants are incorrect in contending that compliance with the express terms of a contract prevents a finding that they breached the implied covenant of good faith and fair dealing. "The covenant is violated when a party to a contract acts in a manner that, although not

---

[9] Campbell also, for the first time in her opposition, argues that AIG did not provide timely written notice of the adjustments made to the settlement rates as required by the Prospectus. MTD Opp'n at 10-11. Because "it is 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss,'" Caballero v. Am. Mortg. Network, No. 1:11cv622, 2011 WL 4330025, at *5 (E.D. Va. Aug. 8, 2011) (quoting Rossman v. Lazarus, No. 1:08cv316, 2008 WL 4181195, at *7 (E.D. Va. Sept. 3, 2008)), those arguments will not be considered.

expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under their agreement." Geren v. Quantum Chem. Corp., 832 F. Supp. 728, 732 (S.D.N.Y. 1993). "New York law appears to invoke the implied covenant of good faith and fair dealing only in those instances where one party has violated the spirit, although not the letter, of a contract." Harris Trust and Sav. Bank v. E-II Holdings, Inc., 926 F.2d 636, 642 (7th Cir. 1991).[10]

Even so, defendants are correct that the broad "deprive the other of the right to receive benefits" language does not allow a plaintiff to use the implied covenant to force the defendants to "guarantee" Campbell's investment; rather, there must be some element of bad faith which resulted in Campbell being denied the benefit of her bargain. Metro Life Ins. Co. v. RJR Nabisco, Inc., 716 F. Supp. 1504, 1519 (S.D.N.Y. 1989). Use of the implied covenant to force such a guarantee would "impose obligations beyond those intended and stated in the language of the" Prospectus. Hilsdene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc., No. 11cv5832, 2012 WL 3542196, at *7 (S.D.N.Y. Aug. 15, 2012).

Campbell does not plead any facts plausibly establishing that any defendant acted in bad faith. It is Campbell's burden to plead sufficient facts to establish that, for example, use of the

---

[10] Van Gemert v. Boeing Co., 520 F.2d 1373 (2d Cir. 1975) is instructive. In that case, plaintiffs purchased debentures which contained a requirement that Boeing provide notice of its intention to "redeem or 'call' the convertible debentures in question." Id. at 1374. The issuing document was silent on the form of notice to be given, and Boeing provided notice of redemption through newspaper advertisement. Id. at 1383. In a later appeal in the same action, the Second Circuit characterized the notice provided as inadequate because it was not "reasonably calculated to inform the debenture holders of the call," and grounded this holding in the "implied requirement of good faith and fair dealing." Van Gemert v. Boeing Co., 553 F.2d 812, 815 (2d Cir. 1977). This does not mean that the implied covenant may be used to add substantive terms. The Second Circuit later made clear that "[t]hose debentures contained no indication as to the type of notice of redemption that was to be provided. It was the total lack of a notice provision . . . that we held necessary as a condition precedent" for invocation of the implied covenant of good faith and fair dealing. Meckel v. Cont'l Res. Co., 758 F.2d 811, 816 (2d Cir. 1985).

anti-dilution provisions was in bad faith. She has pleaded no such facts, instead relying on inappropriate vitriolic rhetoric and hyperbole, which do not advance her cause. See, e.g., Complaint ¶¶ 31B, 33, 35, 38, 39, 42, 48B, 53, and 54; MTD Opp'n at 6-8, 11-13. That AIG exercised the anti-dilution provisions laid out in the Prospectus and that Campbell received less money than she expected or hoped for from her investment does not, without more, establish that defendants acted in bad faith or breached the implied covenant.

Campbell's allegations that defendants breached the implied covenant by issuing a confusing Prospectus and using a confusing ticker symbol are similarly without factual support. At the onset, Campbell acquired the shares though "her brokerage firm in Fairfax County." Complaint ¶ 13. If she did not understand the stock ticker symbol, she could have asked her broker for assistance. Moreover, Campbell's failure to read the Prospectus before purchasing the Equity Units means that she cannot now claim injury from the allegedly confusing nature of the Prospectus. For these reasons, Count IV of the complaint will be dismissed.

### D. Counts II, III, and V - Delaware Law

Despite the clear choice of New York law in the Prospectus, Campbell nevertheless claims, citing to SLUSA, that she may bring claims under Delaware law because AIG is a Delaware corporation.[11] Defendants argue that the Delaware claims are barred by the choice of New York law in the Prospectus and would fail, in any case, under Delaware law. Count II of the complaint alleges a violation of the implied covenant of good faith and fair dealing under Delaware law. Complaint ¶¶ 44-49. In Delaware, "[t]he implied covenant of good faith and fair dealing involves a 'cautious enterprise,' inferring contractual terms to handle developments or

---

[11] SLUSA allows certain class actions to be brought if they are "based upon the statutory or common law of the State in which the issuer is incorporated." 15 U.S.C. § 77p(d)(1)(A). This argument does not save those state law claims because Campbell's Delaware allegations fail as a matter of law and will also be dismissed.

contractual gaps that the asserted party pleads neither party anticipated." Nemec v. Shrader, 991 A.2d 1120, 1125 (Del. 2010) (citation omitted). "[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement," Dunlap v. State Farm Fire and Caus. Co., 878 A.2d 434, 441 (Del. 2005), and Delaware courts "will only imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party expected." Nemec, 991 A.2d at 1126.

Campbell, while again using rhetoric, has not cited any facts from which the Court could conclude that any defendant acted "arbitrarily or unreasonably" to frustrate her investment. See Complaint ¶¶ 50-55. For the same reasons that Campbell's complaint fails to state a claim for a violation of New York's implied covenant of good faith and fair dealing, Campbell's complaint also fails to state a claim for a violation of the covenant of good faith and fair dealing under Delaware law. Accordingly, Count II will be dismissed.

As to Count III, Campbell alleges a bad faith breach of the implied covenant of good faith and fair dealing. Delaware has "firmly rejected the notion that the words 'not in good faith' mean something different than 'bad faith.'" Liberty Prop. L.P. v. 25 Mass. Ave. Prop. L.L.C., C.A. No. 3027-VCS, 2009 WL 224904, at *5 (Del. Ch. Jan 22, 2009). Accordingly, Count III's allegation of a "bad faith" breach of the implied covenant of good faith and fair dealing is duplicative of Count II's allegation of a breach of the implied covenant itself. Accordingly, Count III will be dismissed for the same reasons supporting the dismissal of Count II.

In Count V Campbell alleges unjust enrichment under Delaware law as an alternative to her other counts. Complaint ¶¶ 60-64. Under Delaware law, however, "[a] claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that

gives rise to the unjust enrichment claim." Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 891 (Del. Ch. 2009). Campbell recognizes that there is a contract governing her claims, Complaint ¶¶ 47, 48C, 58, and it is that contract – the Prospectus – which gives rise to her claims. Accordingly, a claim for unjust enrichment is unavailable under Delaware law and Count V will be dismissed.

### E. Personal Jurisdiction

Defendants argue that Campbell has not pleaded sufficient facts to establish personal jurisdiction over the individual defendants. MTD Br. at 22-23. Campbell's response is that by consenting to a waiver of summons under Fed. R. Civ. P. 4(d) personal jurisdiction has been established under Fed. R. Civ. P. 4(k)(1) and 15 U.S.C. § 77v, which states that "process in [cases brought under § 77] may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." MTD Opp'n at 5. Defendants reply that the waiver of summons forms explicitly reserves the party's right to challenge the court's jurisdiction. They also stress that Campbell's argument that the filing requirements of the PSLRA do not apply to her lawsuit means that she cannot now rely on the securities laws to establish personal jurisdiction. Reply Memorandum of Law in Support of Defendants' Motion to Dismiss [Dkt. No. 32] ("Reply Br.") at 12.

Defendants have the better of the argument. By its own terms, 15 U.S.C. § 77v does not apply to this action because Campbell has not made any allegations under § 77. Instead, Campbell has chosen to make allegations under the Declaratory Judgment Act and state law. Campbell must either pursue an action under § 77 and meet the notice requirements of PSLRA and stricter pleading requirements of Fed. R. Civ. P. 9(b) to receive the benefit of § 77v, or pursue state law claims and establish personal jurisdiction in the traditional manner. By failing to

15

allege any proper basis for personal jurisdiction over any individual defendant, those defendants must be dismissed from this litigation.

### F. Attorney's Fees

Lastly, in their oppositions to plaintiff's Motions for Summary Judgment and for Declaratory Judgment defendants ask for an award of attorney's fees and costs under 28 U.S.C. 1927 due to the frivolous nature of those pleadings. The rhetoric in plaintiff's briefs, for example likening the Prospectus to a piece of "hard core pornography," MTD Opp'n at 7, and plaintiff's advancement of extremely frivolous claims, for example that she was harmed by an allegedly confusing Prospectus that she in fact had not read, would support such an award. At this point in the litigation, however, the Court will abstain from awarding fees and costs. Should plaintiff pursue further frivolous claims in this litigation, defendants' request for fees and costs will be reconsidered. Of course, defendants, as the prevailing parties, are still entitled to their costs under 28 U.S.C. 1920.

### III. CONCLUSION

For the reasons stated above, defendants' Motion to Dismiss will be granted, and plaintiff's Motions for Summary Judgment and for Declaratory Judgment will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 20 day of January, 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge